**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD DESIMONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-5232 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| DANAHER CORPORATION *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Leica Biosystems' and Videojet Technologies, Inc.'s motion [34] to enforce the parties' settlement agreement and to stay case deadlines. Also before the Court is Defendants' motion [64] to strike a portion of Peter Roeser's declaration. For the reasons that follow, Defendants' motion [34] is granted in part and denied in part. The Court denies Defendants' motion to enforce the settlement agreement; however, the Court grants Defendants' motion to the extent that Defendants seek to stay their obligation to answer the First Amended Complaint along with other case deadlines. Defendants' motion [64] to strike portions of Peter Roeser's declaration is granted in part and denied in part. As a housekeeping matter, Defendants' motion [32] for leave to file documents under seal is granted. The case is set for further status on September 7, 2018 at 10:00 a.m. to set an evidentiary hearing date for purposes of resolving certain disputed issues of fact relating to whether the parties entered into a binding settlement agreement. All other case deadlines are stayed until further order of the Court.

**I.     Background**

Plaintiff Ronald DeSimone ("Plaintiff") brings this action against Danaher Corporation, X-Rite Pantone, Leica Biosystems, and Videojet Technologies, Inc. (collectively, "Defendants").

According to the operative First Amended Complaint, Plaintiff was jointly employed by Defendants Danaher and X-Rite beginning October 6, 2014. Plaintiff alleges that, in June 2015, he was suffering from severe depression and anxiety. Plaintiff requested short term disability benefits, a temporary, unpaid leave of absence until December 15, 2015, and a transfer to a different position to accommodate this disability. However, all three of his requests were denied. Plaintiff was then terminated from his position on October 5, 2015. [15, ¶¶ 17–28.]

### A. The EEOC Mediation

Following his termination, Plaintiff filed charges of discrimination against all Defendants in this action with the U.S. Equal Employment Opportunity Commission ("EEOC") on April 21, 2016. The charges allege discrimination and retaliation on the basis of his disability. [See 15, Ex. A, at 2.] Plaintiff and Defendants agreed to mediate this dispute at the EEOC's Chicago offices. This mediation took place over three days: October 13, 2016, November 10, 2016, and December 1, 2016. Plaintiff and his attorney, Peter Roeser, participated in the mediation on Plaintiff's behalf. Andrew Bautista as corporate representative for Defendants, along with attorneys Katherine Mendez and Richard McArdle, participated in the mediation on Defendants' behalf.

On October 13, 2016, which was the first day of the EEOC mediation, both parties signed an "Agreement to Mediate" and a "Confidentiality Agreement." [See 44, Ex. B.] The Agreement to Mediate describes the EEOC mediation process generally, noting that it is voluntary and may be terminated at any time. [*Id.*, at 1.] The Confidentiality Agreement provides that all matters discussed during the mediation are confidential. [*Id.*, at 2 ¶ 2.] The Confidentiality Agreement also contains a provision stating that "[i]f a settlement is reached by all the parties, the agreement shall be reduced to writing and when signed shall be binding upon all parties to the agreement." [*Id.*, at 2 ¶ 6.]

On December 1, 2016, which was the third day of mediation, Plaintiff's counsel informed Defendants at approximately 4:00 p.m. that Plaintiff would settle the matter if Defendants paid a specific Settlement Amount.[1]  [58-3 (Mendez Decl.), ¶ 4; 58-4 (McArdle Decl.) ¶ 4.]  At 4:17 p.m., Roeser e-mailed Mendez a draft of a term sheet entitled "DeSimone Binding Term Sheet" that included the Settlement Amount that Plaintiff had offered to Defendants.  [44, Ex. C.; 58-3 (Mendez Decl.), ¶ 5.]  This draft is entitled "Binding Term Sheet" and includes signature lines for Plaintiff, Bautista, and the EEOC Mediator as a witness.  [44, Ex. C.]  Roeser stated in the e-mail, "In case we don't get an entire settlement done tonight I've drafted a binder [sic] term sheet agreement.  I believe I've captured the material terms and left room to add the other standard terms that would normally accompany such an agreement."  [*Id.*]

At 4:20 p.m., Defendants' counsel and Bautista made a phone call and obtained authority to accept Plaintiff's offer. [58-3 (Mendez Decl.), ¶ 6; 58-4 (McArdle Decl.), ¶ 5; 58-5 (Bautista Decl.), ¶ 4.]  Mendez then responded to Roeser's e-mail at 5:27 p.m., stating "here is a revised term sheet."  [44, Ex. D.]  There are several revisions to the term sheet attached to this e-mail, including the addition of a Michigan choice of law and venue provision.  [*Id.*]  This draft still contained signature lines for the parties and the EEOC Mediator.  [*Id.*]

Roeser responded with further edits at 5:53 p.m.: "Attached is the revised term sheet (redlined).  We did not remove the language about Michigan courts and venue, but that may be something we have to address.  All other looks good to us and we will work with client tomorrow to have signed."  [*Id.*, Ex. E.]

---

[1] The parties have placed the term sheet setting forth the specific dollar amount, as well as the other terms of settlement, under seal, and the Court grants their motion to do so.  Because the parties have referred to other provisions of the term sheet in their publicly filed documents, the Court will specifically refer to and quote those provisions as necessary in this opinion.  However, the Court will keep confidential the exact dollar amount referenced in the document and refer to this only as the "Settlement Amount."

The latest version of the binding term sheet was then printed out (the "Term Sheet"). Prior to leaving the EEOC offices, Roeser and McArdle initialed each page of the Term Sheet and signed the last page beneath the signature lines for Plaintiff, Bautista, and the EEOC Mediator. [See 44, Ex. H.] According to Roeser, this was done at Defendants' counsel's suggestion. [63 (Roeser Decl.), ¶ 4.] Plaintiff was no longer at the mediation by this time. Bautista did not sign or initial the document, although he was present when the attorneys did so.

According to Roeser, by the time he sent the 5:53 p.m. e-mail to Defendants' counsel, Plaintiff himself was no longer present at the mediation, although counsel for both parties and Mr. Bautista were still there. Additionally, Roeser states that he informed counsel that (1) Plaintiff was no longer there; (2) Plaintiff was not returning that night; and (3) Plaintiff's signature was required to finalize any agreement. In response, according to Roeser, Defendants' counsel did not express any disagreement. [63 (Roeser Decl.), ¶ 3.] Roeser also informed Defendants' counsel that he would present the Term Sheet to Plaintiff for his review and, if approved, his signature. [*Id.*, ¶ 5.] Roeser further states in his declaration that "[a]t the conclusion of the mediation on December 1, 2016, none of the parties or their lawyers believed that the term sheet had been fully executed" and that "[a]t no point did the parties or their lawyers ever agree that the signature of an attorney was sufficient to bind the parties." [*Id.*, ¶¶ 7–8.]

According to Defendants and their counsel, however, at no point before initialing and signing the Term Sheet did Roeser state that (1) he lacked authority to sign it on Plaintiff's behalf; (2) he was not authorized to bind Plaintiff to the settlement; (3) he was signing the sheet only as a "draft;" or (4) Plaintiff's signature was a condition precedent to the enforcement of the term sheet. [58-3 (Mendez Decl.), ¶ 11; 58-4 (McArdle Decl.), ¶ 7; 58-5 (Bautista Decl.), ¶ 6.]

**B.      The Term Sheet**

The Term Sheet that the attorneys for the parties initialed and signed states in its first paragraph that it "is a binding and enforceable agreement" between X-Rite Inc., Leica Microsystems Inc., Danaher Corp., and Videojet Technologies on the one side and Ron DeSimone on the other. [44, Ex. H, ¶ 1.] It also states that "[t]he final terms of the parties' agreement will be set forth in a Settlement Agreement to be signed by all parties." [*Id.*] The Term Sheet provides that Defendants will, among other things, (1) make a settlement payment to Plaintiff in the Settlement Amount, (2) provide an employment verification letter to Plaintiff that confirms his dates of employment and position held, and (3) agree that Plaintiff "may represent that he was employed with X-Rite from October 6, 2014 through October 5, 2015, and that he has a consulting agreement with X-Rite running through June 2017." [*Id.*, ¶¶ 2–4.] The Term Sheet also includes the Michigan choice of law and venue provisions inserted by Defendants. [*Id.*, ¶ 14.] Paragraph 15, which was in the initial version of the term sheet drafted by Plaintiff's counsel, states, "[o]ther standard terms and conditions, but none of which will prevent the parties from enforcing this binding term sheet." [*Id.*, ¶ 15.] The final page contains signature lines for Plaintiff, Bautista on behalf of Defendants, and the EEOC mediator. Roeser's and McArdle's signatures appear below these signature lines. [*Id.*] Both attorneys also initialed the first two pages of the Term Sheet.

### C.     Post-Mediation Correspondence Between Attorneys

On December 5, 2016, four days after the mediation concluded, McArdle e-mailed Roeser, asking "has your client signed the Binding Term Sheet?" [44, Ex. F.] Plaintiff's counsel responded a few days later, stating that Plaintiff "has not signed the term sheet and we are meeting with him shortly to address the situation." [*Id.*, Ex. G.]

On December 8, 2016, Roeser sent to Defendants' counsel a notice of attorney lien. In response, McArdle asked Roeser, "Can you fill us in on what exactly this means in terms of

receiving a signed term sheet, the status of your representation of Mr. DeSimone, etc.?" [63, Ex. J.] Roeser responded: "Mr. DeSimone has not agreed to the term sheet at this point and he no doubt has issues with some of the terms." [*Id.*] The next week, Defendants' counsel again requested a status update, and Roeser spoke with Mendez about the status of the Term Sheet. [63 (Roeser Decl.), ¶¶ 14–15.] Roeser informed the EEOC mediator that Plaintiff had not agreed to sign the Term Sheet who then, Roeser believes, informed Defendants of this directly. [*Id.*, ¶¶ 16–19.]

### D. Plaintiff's Subsequent Conduct

On June 14, 2017, Plaintiff submitted a resume for a position with Leica Biosystems. [35, Ex. B (Enriquez Decl.), ¶ 5.] This resume stated that Plaintiff worked for X-Rite from 2014 to the present (*i.e.*, June 2017). In late June or early July 2017, in a phone conversation with Mistie Enriquez at Leica Biosystems to discuss his resume, Plaintiff stated that he had left X-Rite in 2015 to go back to Chicago but he continued to work for X-Rite on a 1099 contract until June 2017. [*Id.*, ¶ 6.] Ms. Enriquez made a handwritten notation on a copy of Plaintiff's resume reading "1099 Contract ended in June 2017." [*Id.*, Tab B.] As Defendants note, the provision of a consulting agreement between Plaintiff and X-Rite running through June 2017 was one term of the Term Sheet. [44, Ex. H, ¶ 4.] Plaintiff disputes that he referred to a consulting agreement with X-Rite in this conversation. [44, at 13–14.]

### E. Procedural History

In July 2017, Plaintiff filed his complaint against Defendants in this Court, bringing claims for interference and retaliation under the Family and Medical Leave Act ("FMLA"). Plaintiff also sought a declaration that the Term Sheet is not a valid and enforceable agreement. [See 1.] After receiving a right to sue letter from the EEOC, Plaintiff filed the operative First Amended

Complaint adding a claim for a violation of the Americans with Disabilities Act ("ADA"). The First Amended Complaint thus brings claims against Defendants Danaher and X-Rite for FMLA interference and retaliation (Counts I and II), a claim against all Defendants for discrimination and retaliation in violation of the ADA (Count III), and a claim for a declaratory judgment that the Term Sheet is not a valid and enforceable agreement (Count IV). [See 15.]

However, in May 2017, prior to the filing of the instant action before this Court, Defendant X-Rite filed a complaint against Plaintiff in the Western District of Michigan before Judge Quist seeking a declaration that the Term Sheet is a binding and enforceable agreement. See *X-Rite v. DeSimone*, Case No. 17-cv-478 (W.D. Mich.) (the "Michigan Action"). In November 2017, Judge Quist enjoined Plaintiff from proceeding with the instant action pending a decision on the motion to dismiss or transfer venue that was then pending in the Michigan Action. The parties therefore stipulated to stay this case pending Judge Quist's decision on that motion to dismiss or transfer. [See 26; 28.]

On January 26, 2018, Judge Quist vacated his earlier order enjoining Plaintiff from proceeding with this action. See Michigan Action, Docket Entry 25. Judge Quist determined that the issue whether the parties are subject to the Term Sheet and its Michigan forum selection and venue provisions—and, thus, whether the Michigan court had personal jurisdiction over Plaintiff— is a threshold question over which Illinois courts have jurisdiction. *Id.* at 3. Therefore, Judge Quist vacated his order enjoining the instant action and stayed the Michigan Action pending resolution of this issue. *Id.* at 4.

In February 2018, once the stay in this case was lifted, Defendants Leica and Videojet filed their motion [34] to enforce the parties' settlement agreement and to stay case deadlines, which is

currently before the Court.[2]  Plaintiff filed a response [44], and Defendants filed a reply [53].  The
Court allowed the parties to file supplemental briefs in support of their positions after a status
hearing in June 2018.  [See 58; 63.]  Defendants then filed a motion [64] to strike a portion of the
declaration of Peter Roeser submitted by Plaintiff with his supplemental brief.  Plaintiff has
responded to this motion as well [see 67].

## II.    Legal Standard

Settlement agreements are contracts whose construction and enforcement are governed by
ordinary contract principles.  *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 618 (7th
Cir. 2008), abrogated on other grounds by *Montanile v. Bd. of Trustees of Nat. Elevator Indus.
Health Benefit Plan*, -- U.S. --, 136 S. Ct. 651 (2016).  In determining whether the parties reached
an enforceable settlement agreement, the Court applies state contract law.  *Dillard v. Starcon Int'l,
Inc.*, 483 F.3d 502, 506 (7th Cir. 2007).  Under Illinois law,[3] an agreement is binding and
enforceable where there has been an offer, an acceptance, and a meeting of the minds or mutual
assent as to all material terms.  *Seko Worldwide, LLC v. Four Soft Ltd.*, 503 F. Supp. 2d 1059,
1060–61 (N.D. Ill. 2007) (discussing Illinois law).  The agreement must be sufficiently definite
with respect to all material terms.  *Id.* at 1061.  Material terms are sufficiently definite when they
enable a court to ascertain what the parties agreed to.  *Beverly v. Abbott Labs.*, 817 F.3d 328, 333

---

[2] Defendants X-Rite and Danaher take the position that this Court has no personal jurisdiction over them,
and therefore do not join in this motion.  [See 35, at 1 n.1.]

[3] Both parties appear to agree that Illinois law covers this dispute regarding the enforceability of the Term
Sheet.  [See 35; 44.]  This conforms to Judge Quist's understanding that Illinois courts have jurisdiction to
resolve the threshold issue of the enforceability of the Term Sheet (and its Michigan choice of law
provision).  The Court will therefore apply Illinois law.  See *Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist.
No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) (where neither party raises a conflicts of law issue, "the applicable
law is that of the state in which the federal court sits").

(7th Cir. 2016). "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Id.*

In the context of the settlement of a federal employment discrimination claim, "the enforceability of a settlement agreement also turns on whether the settlement was entered into 'knowingly and voluntarily.'" *Woods v. Wickes Furniture, Inc.*, 2011 WL 1337089, at *2 (N.D. Ill. Apr. 7, 2011) (citing *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008)). However, absent fraud or duress (neither of which is alleged here), an agreement is presumed to be knowing and voluntary when plaintiff is represented by counsel throughout the negotiation and settlement process. *Id.* (citing *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007)).

When the facts are not in dispute, the question whether a contract has come into being is one of law. *Gutta*, 530 F.3d at 618 (citing *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1102 (7th Cir. 1997)). However, the. Seventh Circuit has made clear that a district court should hold an evidentiary hearing where the facts concerning the existence of a settlement agreement are in dispute. See *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 449 (7th Cir. 2004) ("Although a district court has the inherent authority to summarily enforce a settlement agreement, when the existence or terms of a settlement agreement are in dispute, the district court should hold an evidentiary hearing to resolve the disputes or ambiguities.") (citations omitted); *Wilson v. Wilson*, 46 F.3d 660, 665 (7th Cir. 1995); see also *Voso v. Ewton*, 2017 WL 365610, at *4 (N.D. Ill. Jan. 25, 2017) (declining to hold evidentiary hearing where facts were undisputed); *Leibowitz v. Trebels*, 2012 WL 5559554, at *3 (N.D. Ill. Nov. 14, 2012) (noting that court should conduct evidentiary hearing to determine whether parties entered into a settlement agreement when material facts concerning existence of settlement agreement are in dispute).

## III.    Analysis

### A.      Defendants' Motion to Strike

Before addressing the merits of the motion to enforce the settlement agreement, the Court will address Defendants' motion [64] to strike portions of the Peter Roeser declaration that is attached to Plaintiff's sur-reply [63.]   Specifically, Defendants seek to strike the portion of paragraph three in which Roeser states "I told defense counsel that * * * Mr. DeSimone's signature was required to finalize any agreement."  [63 (Roeser Decl.), ¶ 3.]  According to Defendants, this is the first time that Plaintiff has claimed this statement was made during the mediation. Defendants also seek to strike paragraphs eight and nine of Roeser's declaration, which state: "At the conclusion of the mediation on December 1, 2016, none of the parties or their lawyers believed that the term sheet had been fully executed.  Stated another way, the parties and lawyers understood that the signatures of the clients were still required to finalize any agreement."  The declaration then states the basis for this purported understanding.  [*Id.*, ¶¶ 8–9.]  According to Defendants, these allegations are speculative because Roeser does not have personal knowledge of what Defendants or their counsel understood.

In response, Plaintiff argues that Defendants' motion questions the credibility of Roeser's declaration based on the timing of its submission: however, Roeser's declaration was merely submitted in response to Defendants' supplemental briefing which included declarations from Defendants' own counsel regarding the events of the mediation.   [67, at 1.]   Regarding the challenges to paragraphs eight and nine, Plaintiff argues that based on the written and oral communications before, during, and after the mediation, and the Term Sheet itself, Plaintiff "is justified in concluding that no person could reasonably believe that the term sheet had been executed so as to create a binding agreement."  [*Id.*, at 3.]

The Court agrees that paragraphs eight and nine of Roeser's declaration must be stricken. Roeser's statement that other individuals "understood" something is only speculation and cannot be within his personal knowledge. See *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986–87 (7th Cir. 2001); see also *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 812 (N.D. Ind. 2015); *Simpson v. Wayne Cty., Ill.*, 2014 WL 6657589, at *3 (S.D. Ill. Nov. 24, 2014).

However, the Court will not strike Roeser's statement in paragraph three that he informed counsel Plaintiff's signature was required to finalize any agreement and they, in response, did not express any disagreement. Unlike the other statements in the declaration challenged by Defendants, the issue of Roeser's own statements to others and their lack of response to his statements is clearly within Roeser's personal knowledge.

The Court further declines to strike this statement on the basis that Plaintiff has not previously brought it to the Court's attention. After the parties appeared for an in-court hearing on this motion, Defendants requested leave to file a supplemental brief. [See 58.] This supplemental brief included declarations from Defendants' corporate representative and two attorneys who were present on the final day of the parties' EEOC mediation and provided further detail surrounding the timeline of events on that day. Some of these details, including the exact timing of Plaintiff's purported settlement offer and Defendants' acceptance of that offer, had not been presented to the Court in the previous briefs submitted by the parties. The Court accepted this supplemental brief and allowed Plaintiff to file a response. [See 62.] This supplemental response also included a declaration providing factual detail surrounding these events, including Roeser's statement that he represented to Defendants that Plaintiff's signature was required to finalize the agreement. The fact that Plaintiff has not identified this statement before might affect its credibility. But, as further discussed below, the Court cannot resolve credibility issues on the

papers alone. Because the Court has allowed Defendants to further clarify their recollection of how the parties' attorneys came to sign the Term Sheet, the Court will allow Plaintiff to do the same. Defendants' motion [64] to strike is therefore granted with respect to paragraphs eight and nine of Roeser's declaration and denied with respect to paragraph three of Roeser's declaration.

### B.    Defendants' Motion to Enforce the Settlement Agreement

Turning to the merits of Defendants' motion, Defendants argue that the Term Sheet is enforceable because it reflects the parties' mutual assent on all material terms, and Plaintiff's counsel bound Plaintiff to the settlement by signing and initialing it.   Defendants also argue that the Term Sheet is enforceable because Plaintiff later ratified it by accepting one of its material terms.  Plaintiff responds that the parties clearly intended their signatures on the Term Sheet to be conditions precedent to its enforceability.  Because these conditions were not satisfied, the parties did not mutually assent to the terms in the Term Sheet, and thus no binding agreement was ever formed.  According to Plaintiff, the parties' attorneys' signatures and initials on the Term Sheet instead indicate the document contained those terms that would be presented to the clients for final consideration, acceptance, and signature.

In Illinois, "[a] condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform." *McKee v. First Nat'l Bank of Brighton*, 581 N.E.2d 340, 345 (Ill. App. Ct. 1991) (citation omitted).  Generally, the satisfaction of a condition is subject to strict compliance.  *MXL Indus., Inc. v. Mulder*, 623 N.E.2d 369, 374 (Ill. App. Ct. 1993).  However, the party seeking the benefit of a condition precedent "may waive strict compliance by conduct indicating that strict compliance with the provision will not be required."  *Id.* (citing *Cmty. Convalescent Ctr. v. First Interstate Mortg. Co.*, 537 N.E.2d 1162, 1164 (Ill. App. Ct. 1989)).

12

A party's signature to a contract may be a condition precedent, but it need not be: "whether the signing of the instrument is a condition precedent to its becoming a binding contract * * * usually depends upon the intention of the parties." *Consol. Bearings Co. v. Ehret-Krohn Corp.*, 913 F.2d 1224, 1231 (7th Cir. 1990) (quoting *Lynge v. Kunstmann*, 418 N.E.2d 1140, 1144 (Ill. App. Ct. 1981)); see also *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 993–94 (Ill. 1990) (if the parties to a contract "construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed") (quoting *Chi. Inv. Corp. v. Dolins*, 481 N.E.2d 712 (Ill. 1985)); *Lynge*, 418 N.E.2d at 1144 ("The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by acts or conduct of the parties.").

As the parties seeking to enforce the Term Sheet, Defendants have the burden of establishing an offer, acceptance, and mutual assent to all of its material terms. See *Kemp v. Bridgestone/Firestone, Inc.*, 625 N.E.2d 905, 909 (Ill. App. Ct. 1993) (citing *Commonwealth Edison Co. v. Indus. Comm'n*, 521 N.E.2d 159, 161 (Ill. App. Ct. 1988)); see also *Cent. States, Se. & Sw. Areas Pension Fund v. Stewart*, 2015 WL 7568390, at *3 (N.D. Ill. Nov. 25, 2015); *Hyde Park Union Church v. Curry*, 942 F. Supp. 360, 363–64 (N.D. Ill. 1996). However, because Plaintiff contends that the parties' signatures were conditions precedent to the enforcement of the Term Sheet, Plaintiff bears the burden of proving the parties intended this condition at the time of the contract. See *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 161 F.3d 443, 447 (7th Cir. 1998) (party arguing that release was unenforceable because a condition precedent to its formation was not fulfilled "bears the burden of clearly establishing that the parties intended to create a condition precedent at the time the contract was made") (citing *Wasserman v. Autohaus on Edens, Inc.*, 559 N.E.2d 911, 916 (Ill. App. Ct. 1990)); *Meyer v. Marilyn Miglin, Inc.*, 652

N.E.2d 1233, 1239 (Ill. App. Ct. 1995) ("When a party to a contract contends that language it inserted into the agreement creates a condition precedent, that party must establish that the parties intended such a condition at the time they entered the contract."); see also *Solaia Tech. LLC v. ArvinMeritor, Inc.*, 2006 WL 695699, at *5 (N.D. Ill. Mar. 16, 2006) (on plaintiff's motion to enforce oral settlement agreement, third-party defendant had burden to establish that parties intended execution of written agreement as condition precedent at time of contract).

The Court will first address the language of the Term Sheet itself before considering the evidence submitted by the parties regarding the negotiation of the Term Sheet to determine whether the parties intended that the document would not be enforceable until the parties themselves signed it. As set forth more fully below, this evidence reveals a factual dispute regarding the parties' intent to make the Term Sheet an enforceable agreement that cannot be resolved without an evidentiary hearing.

### 1.     The Language of the Term Sheet

According to Defendants, on the final day of mediation, Roeser informed Mendez, McArdle and Bautista that Plaintiff would settle for the Settlement Amount and, subsequently, Roeser emailed Mendez a draft of the term sheet. [58 (Mendez Decl.), ¶¶ 4–5.] Mendez, McArdle, and Bautista then obtained authority to accept this offer from Plaintiff before sending further revisions of the term sheet back to Roeser. [*Id.*, ¶¶ 6–7.] The Term Sheet reflects this Settlement Amount. [44, Ex. H, ¶ 2.] Plaintiff does not raise any dispute regarding this evidence of offer and acceptance.

Plaintiff also does not dispute that the material terms in the Term Sheet were "sufficiently definite." *Beverly*, 817 F.3d at 333. Indeed, the material terms of the Term Sheet, although incomplete in some details, are easily ascertainable: in return for the Settlement Amount, an

employment verification letter, and a consulting agreement with X-Rite, Plaintiff would release all of his claims against Defendants and withdraw his EEOC charge.  [See 44, Ex. H, ¶¶ 2–5, 7, 12.] Defendants have thus met their burden of establishing that the terms of the Term Sheet are sufficiently definite to be enforceable.  See, *e.g.*, *Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010); *Seko Worldwide*, 503 F. Supp. 2d at 1061.

The heart of the parties' dispute is whether the Term Sheet reflects the mutual assent of both parties to its terms.  The Court first looks to the language of the Term Sheet itself to determine whether it shows an intent to be bound, or if it instead shows an intent to make Plaintiff's signature a condition precedent to its enforceability.  See *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent.") (citing *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)).  Based on the Term Sheet's language alone, there is little evidence of an intent to make the parties' signatures preconditions to its enforceability.  First, the document's title indicates its binding nature, and the first paragraph states that it "is a binding and enforceable agreement" between Plaintiff and Defendants.  [44, Ex. H, ¶ 1.]  This is reiterated in paragraph 15, which provides for "[o]ther standard terms and conditions, but none of which will prevent the parties from enforcing this binding term sheet."  [*Id.*, ¶ 15.]  These references to the document's binding nature tend to negate Plaintiff's argument that the attorneys signed the Term Sheet because it was merely the operative draft.  The document contains no reference to the word "draft," and it instead includes language indicating that it is intended to be binding.  See *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used.").

The Term Sheet does say that "[t]he final terms of the parties' agreement will be set forth in a Settlement Agreement to be signed by all parties." [44, Ex. H, ¶ 1.] However, "informal writings between parties can constitute a binding settlement agreement unless the parties decide to expressly condition their deal on the signing of a formal document." *Seko Worldwide*, 503 F. Supp. 2d at 1061 (citation and internal quotation marks omitted); see also *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992) ("The fact that a formal written document is anticipated does not preclude enforcement of a specific preliminary promise."). This provision of the Term Sheet does not expressly condition enforceability on a more formal settlement agreement. To the contrary, the document says that the Term Sheet is itself a "binding and enforceable agreement." And the Term Sheet contains no other explicit provision conditioning its enforceability on the parties' signatures. See *Woods*, 2011 WL 1337089, at *3 (applying Illinois law) (denying motion to enforce settlement agreement in employment discrimination action because final version of written agreement conveyed intention for plaintiff's signature to serve as precondition to enforceability; agreement stated that it would not be effective until plaintiff signed it and that release provision would cover claims up until date plaintiff signed the agreement); *Solaia Tech.*, 2006 WL 695699, at *6 (applying Illinois law) (denying motion to enforce settlement agreement where final draft stated that agreement would become effective only upon exchange of required signatures); *In re Estate of Schiessle*, 2017 IL App (1st) 162610-U ¶ 26 (circuit court erred in finding parties' oral settlement agreement enforceable, as it contained explicit language stating that their obligations were "subject to" execution of a subsequent written agreement).

Plaintiff points to several aspects of the Term Sheet that, he claims, demonstrate an intent to make his signature a condition precedent to enforceability. Plaintiff notes that the Term Sheet includes signature lines for Plaintiff, Bautista as a representative for Defendants, and the EEOC

mediator.  Moreover, the attorneys who signed the term sheet did so underneath the signature lines in their own names, not in their clients' names.  Plaintiff further points out that neither the EEOC mediator nor Bautista signed the term sheet, despite being present when the attorneys did so.

This does not by itself indicate that the parties intended to condition the enforceability of the Term Sheet on the presence of the parties' or the EEOC mediator's signatures.[4]  In Illinois, "[a] signature on the contract is not a *per se* prerequisite to enforcement."  *Detroit Tigers, Inc. v. Ignite Sports Media, LLC*, 203 F. Supp. 2d 789, 796 (E.D. Mich. 2002) (citing *Lynge*, 418 N.E.2d at 1144); see also *In re Vic Supply Co.*, 227 F.3d 928, 932 (7th Cir. 2000) (noting that "[a]cceptance can be effectuated by performance as well as by a signature").  Parties can certainly contract for a requirement that an agreement be signed before it is enforceable.  But the presence of signature lines for the parties on the document alone does not plainly indicate that the parties intended to create such a condition.  See *Cotton v. Adams*, 2017 WL 972016, at *2 (N.D. Ill. Mar. 14, 2017) (enforcing settlement agreement even though documents were unsigned); *Zendejas v. Reel Cleaning Servs., Inc.*, 2009 WL 2431299, at *14 (N.D. Ill. Aug. 6, 2009) (granting motion to enforce settlement agreement where plain language of agreement "did not include language that the settlement would be binding only upon execution of the agreement of the parties"); *Detroit Tigers*, 203 F. Supp. 2d at 796 (applying Illinois law) (denying motion to dismiss breach of contract claim where parties had not signed contract; plaintiff pleaded sufficient facts that defendant had manifested assent to contract through conduct, and earlier agreement between parties did not make signatures a condition precedent to enforcement of later agreement).  The presence of these signature lines does indicate, however, that the parties contemplated that they themselves would sign the agreement.  To determine whether the parties intended this to be a condition precedent,

---

[4] The signature line for the mediator notes that she would be signing as a witness, rather than as a party to the agreement itself.  [44, Ex. H, at 3.]

rather than one of the standard conditions waived in paragraph 15 of the Term Sheet, the Court now considers extrinsic evidence of the negotiations between Plaintiff and Defendants during the EEOC mediation.

### 2. A Factual Dispute Exists That Precludes the Court from Summarily Determining the Term Sheet's Enforceability

Initially the Court notes that, contrary to Defendants' arguments, it is proper to consider extrinsic evidence of the parties' negotiations to determine whether they intended any conditions precedent to the existence of a binding contract. "Ordinarily, parol evidence may not be used to consider the meaning of a contractual term when the terms are clear and unambiguous. However, parol evidence is admissible to show a condition precedent to the existence of a contract." *N. Tr. Co. v. Brentwood N. Nursing & Rehabilitation Ctr., Inc.*, 588 N.E.2d 467, 470 (Ill. App. Ct. 1992) (citations omitted); see also *Mosley v. Hackney*, 2012 IL App (5th) 110408-U ¶ 17 ("Where a contract is not expressive of the complete agreement and understanding of the parties, consideration of the antecedent proceedings does not serve to vary the contract terms, but rather exemplifies the terms of the agreement.") (citing *N. Tr. Co.*, 588 N.E.2d at 470).

Plaintiff points to the following as evidence that the parties intended to make their own signatures conditions precedent to enforceability of the Term Sheet: (1) the correspondence and statements between the parties' attorneys exchanging drafts of the Term Sheet before they signed it; (2) the correspondence between the parties' attorneys after December 1, 2016; and (3) the Confidentiality Agreement signed on the first day of mediation. According to Plaintiff, this evidence in combination with the signature lines that were on the draft of the Term Sheet that the parties' attorneys signed demonstrates that the signatures of the parties themselves were required on the Term Sheet before it became a binding and enforceable settlement agreement.

Considering this evidence, the Court concludes that there is a factual dispute regarding the parties' intent to have their own signatures be conditions precedent to the Term Sheet's enforceability. Consequently, an evidentiary hearing is necessary before the Court can determine if the Term Sheet is enforceable. See *Sims-Madison*, 379 F.3d at 449; *Wilson*, 46 F.3d at 665.

Specifically, according to Defendants, before the attorneys for the parties printed out and signed the Term Sheet on the final day of mediation, Roeser never claimed that he lacked the authority to sign the Term Sheet on Plaintiff's behalf, that he was not authorized to bind Plaintiff to the Term Sheet, or that Plaintiff's signature was a condition precedent to enforcement of the Term Sheet. [58-3 (Mendez Decl.), ¶ 11; 58-4 (McArdle Decl.), ¶ 7; 58-5 (Bautista Decl.), ¶ 6.] If the Court accepts this, the Term Sheet would likely be enforceable. The e-mails between counsel before and after they signed the Term Sheet, for example, reference Plaintiff's signature but do not unambiguously confirm an intent to be bound by the Term Sheet only when that signature is obtained. See *Schaap v. Exec. Indus., Inc.*, 760 F. Supp. 725, 728 (N.D. Ill. 1991) (a written document was not a condition precedent to creation of binding settlement agreement, where draft agreement itself contained no evidence of such a condition and there was no evidence in circumstances surrounding the settlement that parties intended to create one); *Lampe v. O'Toole*, 685 N.E.2d 423, 425 (Ill. App. Ct. 1997) (enforcing oral settlement agreement where there was no evidence that, during negotiations, either party specified that the agreement hinged on the execution of a written release).

However, according to Plaintiff's counsel Roeser, after emailing his second round of edits on the Term Sheet to Defendants' counsel, he informed Mendez and McArdle that (1) Plaintiff's signature was required to finalize any agreement, and (2) he would present the Term Sheet to Plaintiff for his review and, if approved, his signature. In response, according to Roeser,

Defendants' counsel expressed no disagreement. [63 (Roeser Decl.), ¶¶ 3, 5.] If the Court accepts this testimony instead, it does indicate an objective intent, based on the words used by Roeser and Defendants' non-response, to make Plaintiff's signature a condition precedent. This is especially true in light of the signature lines for the parties themselves that appear on the face of the document. Indeed, accepting that Roeser made this statement makes the other evidence in the record more indicative of this intent. For example, Defense counsel's e-mails seeking updates on whether Plaintiff has signed the Term Sheet would indicate that Defendants did not yet consider the Term Sheet binding, if Plaintiff's counsel had previously expressed this understanding.[5]

Thus, these conflicting recollections of events raise a dispute over the critical issue: whether the parties, through their objective words and conduct, manifested an intent to make the parties' signatures a condition precedent to the enforcement of the Term Sheet. Compare, *e.g.*, *Ice Glass Prints Fla., LLC v. Surprize LLC*, 2010 WL 1702195, at *7 (N.D. Ill. Apr. 27, 2010) (adopting magistrate judge's report and recommendation, and granting motion to enforce settlement agreement where there was *no* evidence that the parties conditioned the settlement on it being reduced to writing beforehand), with *Solaia Tech.*, 2006 WL 695699, at *8 (denying motion to enforce settlement agreement where the parties' conduct and communications

---

[5] Additionally, the import of the Confidentiality Agreement that the parties signed at the outset of the EEOC mediation is affected by this factual dispute. This Confidentiality Agreement states that if the parties reach a settlement, "the agreement shall be reduced to writing and when signed shall be binding upon all parties to the agreement." [44, Ex. B, at 2 ¶ 6.] As Defendants point out, the Term Sheet is signed by the parties' attorneys, and it therefore complies with the Confidentiality Agreement's requirements to make their settlement binding. See *Coldwell Banker Real Estate LLC v. Centanne*, 2010 WL 4313766, at *4 (N.D. Ill. Oct. 25, 2010) (applying Illinois law) (rejecting argument that settlement agreement was unenforceable as unsigned by the plaintiff; the settlement includes signature of counsel for plaintiff, and "[u]nder basic principles of agency, that approval was sufficient and bound" plaintiff). However, if Plaintiff's attorney made clear before signing the Term Sheet that it was subject to his client's final signature, Plaintiff's interpretation of the Confidentiality Agreement—that it required the signatures of the parties on a settlement agreement to make that settlement binding—is a more reasonable one.

objectively indicated that they did not consider themselves to have a binding contract). This dispute cannot be resolved on the papers alone.

This factual dispute also affects the parties' respective arguments regarding whether Roeser had the express authority to bind Plaintiff to the Term Sheet and whether Plaintiff later ratified Roeser's signature by accepting the benefits of the Term Sheet. In Illinois, "an attorney has no authority to settle a claim of the client absent the client's express authorization to do so." *Magallanes v. Ill. Bell Tele. Co.*, 535 F.3d 582, 584 (7th Cir. 2008) (citing *Webster v. Hartman*, 749 N.E.2d 958, 963 n.1 (Ill. 2001); *Brewer v. Nat'l R.R. Passenger Corp.*, 649 N.E.2d 1331, 1334 (Ill. 1995)). The authority of an attorney to agree to an out-of-court settlement will not be presumed, and the burden of proof rests on the party alleging authority to show that it existed. *Id.* (citing *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 1000 (7th Cir. 2001)).

Defendants have put forward ample evidence of Roeser's authority to bind Plaintiff to the Term Sheet. Roeser negotiated the settlement over the three days of mediation (at which Plaintiff himself was also present), prepared the original draft of the Term Sheet, and signed and initialed the Term Sheet along with Defendants' counsel. Under such circumstances, finding that Plaintiff's counsel had express authority to enter into this settlement agreement would normally be an easy decision. See *Condon & Cook, L.L.C. v. Mavrakis*, 69 N.E.3d 274, 285 (Ill. App. Ct. 2016) (where defendant "electronically projected himself into the room" where negotiations were taking place and cloaked attorney with apparent authority, defendant could not challenge that apparent authority he bestowed on attorneys to negotiate settlement); *Sakun v. Taffer*, 643 N.E.2d 1271, 1278 (Ill. App. Ct. 1994) (finding that defendants' attorney clearly had authority to enter settlement negotiations, and attorney's authority to consummate those negotiations into a finalized agreement was logically implied). However, Roeser's statement that he explicitly informed Defendants'

counsel that the Term Sheet was still subject to Plaintiff's final approval, if accepted, indicates that Roeser's authority to bind Plaintiff to the Term Sheet was not the "logical implied extension" of his authority to negotiate during the mediation. *Sakun*, 643 N.E.2d at 1278.

Defendants also argue that, even if Roeser did not have authority to bind Plaintiff to the Term Sheet by signing it, Plaintiff later ratified that act by accepting one of the benefits of the Term Sheet. Specifically, Plaintiff represented to a potential employer that he had a consulting agreement with X-Rite ending in June 2017, which was one of the material terms of settlement outlined in the Term Sheet. According to Defendants, Plaintiff made this representation both in his resume and in a telephone conversation with the hiring manager of the prospective employer. [35, Ex. B (Enriquez Decl.), ¶¶ 5–6.] Plaintiff has disputed making this statement over the phone, although he has not disputed the evidence presented by Defendants that his resume reflects employment with X-Rite as of June 2017. [See 44, at 13–14.]

"When an act is performed for the benefit of another by a person without authority, or by an authorized agent in excess of his authority, the person for whose benefit the act was done may ratify the act." *Kulchawik v. Durabla Mfg. Co.*, 864 N.E.2d 744, 750 (Ill. App. Ct. 2007) (citing *Effingham State Bank v. Blades*, 487 N.E.2d 431, 434 (Ill. App. Ct. 1985)). "A client ratifies the actions of his attorney by not repudiating the acts once he has knowledge of them or by accepting the benefits of those acts." *Condon & Cook*, 69 N.E.3d at 286 (quoting *Kulchawik*, 864 N.E.2d at 750). Plaintiff's acceptance of the Term Sheet's benefits may have ratified his attorney's signature on the document, but this might not have had a legal effect if the parties' objective conduct prior to printing out the Term Sheet indicated that the attorneys' signatures were not enough to make it binding, and that Plaintiff's signature was a condition precedent to the Term Sheet's binding effect.

Thus, the undisputed evidence regarding Plaintiff's holding himself out as an X-Rite consultant until June 2017 on his resume does not obviate the need for an evidentiary hearing in this case.[6]

Defendants argue in their supplemental briefing that Plaintiff has never claimed to have made this statement or representation regarding Plaintiff's signature in any previous briefing, pleading, or appearance before this Court or in the Michigan Action. [58-3 (Mendez Decl.), ¶ 11; 58-4 (McArdle Decl.), ¶ 7.] The Court acknowledges that this factual dispute only became apparent in the supplemental briefing by the parties but, as already discussed above, the Court will not strike Roeser's statement based on this fact alone. While Plaintiff's failure to present this fact of Roeser's statement earlier might affect its credibility, the Court cannot easily resolve credibility determinations based solely on the submitted declarations. See *Midwest Transit, Inc. v. Hicks*, 79 F. App'x 205, 209 (7th Cir. 2003) (determination of what weight to give declaration "depends upon the credibility of the declaration and Hicks's credibility as a witness, [which] is difficult to make solely on the basis of a paper record"); *Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999) (district court erred in making a credibility determination based solely on an affidavit). Based on this dispute of fact surrounding the parties' intent in drafting the Term Sheet, the Court cannot summarily enforce or dismiss the Term Sheet as a binding document.

Therefore, Defendants' motion [34] to enforce the Term Sheet as a binding settlement agreement is denied. This denial is without prejudice to the renewal of the motion after the Court holds an evidentiary hearing to resolve these disputed factual issues. If the motion is renewed, it can likely be disposed of with only minimal further briefing, based on the parties' extensive presentation of their arguments thus far. Moreover, because the threshold issue whether the parties

---

[6] Of course, Plaintiff's acceptance of the Term Sheet's benefits may be evidence that his signature was *not* a condition precedent to the Term Sheet becoming binding on the parties. This is another issue that will need to be considered and resolved after a full evidentiary hearing.

should be litigating this case at all still exists, the Court grants Defendants' motion to the extent that Defendants request a stay of all other deadlines until this threshold issue is resolved.

## IV.     Conclusion

For the reasons stated above, Defendants' motion [34] is granted in part and denied in part. The Court denies Defendants' motion to enforce the settlement agreement; however, the Court grants Defendants' motion to the extent that Defendants seek to stay their obligation to answer the First Amended Complaint along with other case deadlines. Defendants' motion [64] to strike portions of Peter Roeser's declaration is granted in part and denied in part. As a housekeeping matter, Defendants' motion [32] for leave to file documents under seal is granted. The case is set for further status on September 7, 2018 at 10:00 a.m. to set an evidentiary hearing date for purposes of resolving certain disputed issues of fact relating to whether the parties entered into a binding settlement agreement. All other case deadlines are stayed until further order of the Court.

Dated: August 31, 2018

_____
Robert M. Dow, Jr.
United States District Judge